Harry W. Leighton v. Commissioner.
Harry W. Leighton v. Commissioner
Docket No. 5064.
United States Tax Court
1945 Tax Ct. Memo LEXIS 45; 4 T.C.M. (CCH) 991; T.C.M. (RIA) 45332; November 5, 1945
Walter W. Pearson, Esq., 208 S. La Salle St., Chicago 4, Ill., and William M. Layman, C.P.A., 11 S. La Salle St., Chicago 3, Ill., for the petitioner. Harold H. Hart, Esq., for the respondent. MURDOCK Memorandum Findings of Fact and Opinion The Commissioner determined a deficiency of $5,356.72 in the income tax of the petitioner for the calendar year 1941. One of the adjustments which he made was to add $9,304.10 to income. He explained the adjustment as follows: (a) It has been determined that your wife, Lenore Leighton, is not a bona fide partner in the business conducted by you under the name of Harry W. Leighton Company within the meaning of the internal revenue laws. It has further been determined that the $9,304.10 reported by Lenore Leighton as her purported distributable share of the profits of *46 the so-called Harry W. Leighton Company for the year 1941 constituted income attributable to personal services rendered by you and accordingly was your income within the meaning of Section 22 of the Internal Revenue Code. The only issue for decision is whether the Commissioner erred in adding the $9,304.10 to the petitioner's income. Findings of Fact The petitioner is an individual who filed his income tax return for 1941 with the collector of internal revenue for the first district of Illinois. He has been engaged in the same kind of business at the same address since 1914. The business was competitive. Capital was not a material income producing factor in the business. The business was that of agent for manufacturers of production tools, including portable air tools for drilling, reaming, bolt tightening, screw driving, light riveting, etc., milling cutters and reamers, hack saws, hand files, punches, dies, and drawing compound. A part of the business was the rendition of engineering service in connection with the products sold. Almost all of the business was done on commission. A small part consisted of sales as principal. The petitioner obtained orders *47 for the products of the manufacturers which he represented. He transmitted those orders to the manufacturers, the manufacturers shipped the goods directly to the customer, and paid the petitioner a commission for his services. The petitioner originally carried on this business as a sole proprietcr. He organized a corporation in 1929 and carried on the same business through it until early in 1941. The opening balance sheet of the corporation for 1929 shows only two items - good will in the amount of $10,000, and capital stock in the amount of $10,000. The income tax returns of the corporation for the years 1929 through 1941 show losses for eight years totaling $3,603.11 and gains for five years totaling $1,934.74, or a net loss of $1,668.37 for the entire period of its existence. The total amount deducted for salary of the petitioner on those returns is $62,940. The only other deductions for officer's salary during this period were a deduction of $300 in 1929 and one of $1,504.10 in 1930 for W. Earl Thurber. It was stated on the 1930 return that Thurber owned 5 shares and the petitioner 95 shares of the stock of the corporation. Thurber was not mentioned on later returns. The record *48 does not show when he dropped out of the business or what became of his interest therein. A dividends paid credit of $1,900 was claimed on the 1937 return, but the record does not show what part, if any, of the amount was ever paid. Notes were issued for a large part of it but the record does not show that they were ever paid. The petitioner represented about five manufacturers when he began business in 1914 and was representing about seven manufacturers in 1941. The record does not show that the five manufacturers who were represented in 1914 were not still being represented in 1941. The record does not show how many customers of the business there were in 1941. The business office of the corporation at all times material hereto was located at 565 W. Washington Street, Chicago, Illinois. The business shared a small office space there with another tenant. Three persons were employed full time during 1941. Two of these did clerical work in the office. The third devoted most of his time to servicing products sold. Two other individuals, who were selling products which did not directly compete with the products sold by Leighton, also sold some products for Leighton along with their *49 other line. The balance sheet of the corporation at the close of 1940 showed capital stock in the amount of $9,500 and a deficit of $4,643.34. The principal asset shown on that balance sheet was good will in the amount of $10,000. The petitioner decided in the early part of 1941 to operate the business from that time forward as a sole proprietorship. The corporation did not do any business after February 1941 and was dissolved in January 1942. The petitioner and his wife, Lenore, in 1940 and 1941 discussed the question of forming a partnership between them for the operation of the business. The petitioner consulted a lawyer in the latter part of 1941 on this subject. They entered into a written agreement in the early part of 1942 on which agreement at that time they placed the date June 1, 1941. That agreement was not in effect during 1941. The record does not shown what oral agreement, if any, between the petitioner and his wife for the conduct of the business by the two of them as partners was in effect during 1941, or, if there was such an agreement, when it became effective. The petitioner's wife, Lenore, was never regularly employed in the business, never put in any regular *50 hours at the office or elsewhere in furtherance of the business, never received any salary or other compensation from the business, and never invested any of her own money in the business. The record does not show that she ever received any of the earnings of the business, either before, during or after 1941. The record does not show what the earnings of the business were for any part or all of the last ten months of 1941. The books and records of the business do not contain any entries showing that the business was conducted as a partnership between the petitioner and his wife at any time during 1941. The petitioner's wife, during 1941 and in prior years, frequently entertained and helped to entertain executives of the manufacturing corporations which the petitioner represented and some representatives of customers of the petitioner's business. She had no social security card during 1941. No partnership between the petitioner and his wife was registered during 1941 with the County Clerk of Cook County, Illinois, in which the petitioner's office was located. Opinion MURDOCK, Judge: The business involved in this proceeding was carried on through a corporation for the first two *51 months of 1941, and then the petitioner abandoned the corporation and began to carry on the business as an individual. He admits that he carried on the business as an individual from March 1st until June 1st. His contention apparently is that beginning June 1st and continuing throughout the last seven months of the year he and his wife carried on the business as partners. He apparently contends that they were equal partners. The word "apparently" is used deliberately because there is no evidence in the record as to just when this alleged partnership is supposed to have begun to operate the business, and the evidence in regard to the formation and terms of the partnership is so vague that no satisfactory findings of fact can be made from it. The petitioner does not rely upon the written agreement which, although it bears the date June 1, 1941, was not executed until some time in the early part of 1942. He relies upon an oral agreement. There is evidence to show that they discussed forming a partnership, but the evidence does not show when, if ever, there was a meeting of their minds on the subject or, if there was a meeting of the minds, just what they agreed to. There is no evidence *52 whatsoever in regard to earnings after June 1, 1941, or for that matter after March 1, 1941. The determination of the Commissioner can not be reversed on that kind of a showing. The petitioner contends that his wife contributed valuable services to the success of the business in that she entertained and helped to entertain manufacturers who were represented, and also customers. It does not appear that her entertaining was very different during the last seven months of 1941 from what it had been prior thereto. The petitioner does not claim that his wife was regularly employed in the business or that she made any substantial contribution to its success except by way of entertainment. A finding has been made in regard to the entertaining done by the wife. However, the fact that she, the wife of the petitioner, helped him by entertaining customers would not in and of itself justify excluding from his income and taxing to her the $9,304.10 which the Commissioner has added to the petitioner's income. The record does not indicate that the wife ever contributed one cent of her own money to the business. It does not show that she ever had any money of her own to contribute to the business *53 or that the business ever needed or used any capital. There is evidence that in 1932 Lenore's father received a check for $1,504.77 on some kind of an insurance disability claim; he endorsed the check to the petitioner, and the petitioner put $1,000 of this money "into the business." It is not shown how the money went into the business. Furthermore, it is not at all clear that the money belonged to his wife. She testified that the money came from her father's insurance which "we were keeping up." Apparently, the petitioner at one time owned all of the outstanding stock of the corporation consisting of 95 shares after Thurber dropped out in some undisclosed way. There is evidence that he gave his wife a certificate for 64 shares on December 16, 1937. This stock was not issued to her in recognition of any money of her own which she had invested in the business. It may have been done only for convenience. The company on its return for that year claimed a dividends paid credit of $1,900. Lenore filed a return for that year reporting $1,300 of dividends from the corporation. Apparently, her right to the dividend was questioned by the Commissioner and she later accepted a refund of the *54 tax which she paid on her return for that year. The record also indicates that notes were issued to her for the dividend. The record does not show that the notes were ever paid but indicates that they were not paid. The company had a substantial deficit at the time of the purported dividend. The record does not show that the stock ever had any value but indicates, on the contrary, that it was worthless at all times material hereto. There is evidence that the petitioner arranged to buy the shares of stock owned by his wife in the latter part of 1940 and he gave her his notes for $4,000 payable in June and December 1942 without interest. He never paid anything on the notes but contends that he accepted them for cancellation as consideration for the transfer to his wife as a partner of one-half of the business. We can not find from these transactions or from anything else in the record that the wife ever contributed any money to the business or paid anything of value for a share in the business. These intrafamily transactions seem to have been largely for the convenience of the petitioner and the business. When it suited his convenience, he had some of the shares of the corporation stand *55 in the name of his wife and also in the name of his daughter. Again, when it suited his convenience, he took back the shares and dissolved the corporation. The shares never had any value. It does not appear that the petitioner ever intended to pay the notes which he gave his wife or that he ever did pay them. Thus, the evidence does not show that the wife ever contributed anything for a supposed partnership interest in the business. Finally, the evidence indicates that the earnings of this business were really the earnings of the petitioner and not those of his wife. He had been engaged in the same business for 27 years in 1941. The only earnings which the business had ever produced were the amounts which he had withdrawn as salary or compensation for his personal services. His wife made no capital contribution to the business, and even if she had, it would not have contributed materially to the earnings. Her entertaining was not such a contribution of services as to constitute her a partner in view of the other circumstances one of which, not mentioned heretofore, is that she had no voice in the management of the business. The income of the business for 1941 is properly taxable *56 to the petitioner who earned it and who, so far as this record shows, kept all of it for himself. Lucas v. Earl, 281 U.S. 111; Schroder v. Commissioner, 134 Fed. (2d) 346, Mead v. Commissioner, 131 Fed. (2d) 323; Tinkoff v. Commissioner, 120 Fed. (2d) 564; Earp v. Jones, 131 Fed. (2d) 292; M. M. Argo, 3 T.C. 1120. Decision will be entered for the respondent